# United States Bankruptcy Court, Northern District of Illinois

| Name of Assigned Judge | Manuel Barbosa | CASE NO. | 09-B-00766 |
|---|---|---|---|
| **DATE** | August 19, 2010 | **ADVERSARY NO.** | |
| **CASE TITLE** | Lavonia D. Gaddy, Debtor | | |

**DOCKET ENTRY TEXT**

For the reasons set forth below, the Debtor's motion for sanctions is DENIED.

■[ For further details see text below.]

## MEMORANDUM ORDER

This matter is before the Court on the Debtor's motion for sanctions against creditor Arthur Wulf for willfully violating the automatic stay. The Debtor filed her motion for sanctions against Mr. Wulf on January 22, 2010. The Court held a hearing on the motion on January 28, 2010, at which the Court took testimony of the Debtor, but at which Mr. Wulf failed to appear. Based on the testimony presented, the Court entered an order granting sanctions against Mr. Wulf on February 2, 2010. Mr. Wulf then filed a motion to vacate the order on July 7, 2010. Mr. Wulf argued that there were deficiencies in the notice that the Debtor gave him prior

to the motion for sanctions, and that she subsequently failed to notify him of the entry of the order granting sanctions against him. The Court held an evidentiary hearing on July 15, 2010, at which it granted Mr. Wulf's motion to vacate the February 2010 order, and heard evidence on the original motion for sanctions.

The Debtor filed a petition for protection under Chapter 13 of the Bankruptcy Code with this Court on January 13, 2009. Mr. Wulf was the Debtor's landlord pre-petition and for a significant period post-petition. Mr. Wulf testified that the Debtor occupied the premises until July 2009, and that she had not paid rent for approximately 12 months.[1] The record and testimony demonstrate that the Debtor did not inform Mr. Wulf of her bankruptcy until she called him on August 17, 2009.[2] The Debtor included Mr. Wulf in her bankruptcy petition under 'executory contracts,' but not as a creditor, meaning that he was not included in notices sent to creditors by the Clerk's office. The Debtor vacated the rental property in July 2009, and sometime on or around that date Mr. Wulf had a conversation with the Debtor at which she failed to inform him that she had filed for bankruptcy. On July 15, 2009, the Debtor filed a motion to extend time to file a claim on behalf of Mr. Wulf, but sent his notice to 77 W. Jackson rather than his true address at 77 W. Washington. He did not receive notice of the motion and did not appear at the hearing on the motion to extend, which was granted on August 6, 2009. The Debtor filed a proof of claim on behalf of Mr. Wulf on August 28, 2009. On September 15, 2009, Mr. Wulf filed two amended proofs of claim, by which time he must have become aware of the bankruptcy.

The Debtor alleges that Mr. Wulf violated the automatic stay through two actions. First, he sent a letter to the Debtor, which was enclosed in a letter to the general manager of the hotel she worked at. Second, he made two or more phone calls to the hotel she worked at. The two letters were dated August 17, 2009, but were post-marked August 18, 2009. The outside letter to the general manager asked him to deliver the enclosed letter

---

[1] Therefore, at least a portion of the amount owing was for pre-petition rent, and in Mr. Wulf's amended proof of claim $36,000 out of $45,400 was labeled 'pre-petition.' To the extent that Mr. Wulf's actions were an effort to collect on a debt, the parties have not disputed that the effort was at least in part in respect of pre-petition debt.

[2] From testimony, it was not entirely clear if the call was made by Ms. Gaddy personally, by her attorney, or a phone call by each, but the parties concur that the call or calls occurred on August 17, 2009.

to the Debtor, but also indicated that the Debtor was behind on rent payments, that the payments should be deducted from her salary, and asked why the hotel was not deducting and remitting the $100 per week payments from her payroll. The letter to the Debtor asserted rent past due for the prior 12-months, asserted a claim for physical damage to the rental property, asked the debtor to make $100 per week payroll deductions to Mr. Wulf, and threatened to take legal action if she did not. The letter also stated that she should not "bother to list me in any bankruptcy filing. You have committed fraud, and that is not dischargeable in bankruptcy." The Debtor also alleged that Mr. Wulf called her employer at least twice, inquiring about her. She had to explain to several superiors why Mr. Wulf was calling the hotel and the circumstances surrounding her bankruptcy. However, while she alleged that the phone calls were received sometime around the middle of August, she could not remember the date or whether the phone calls were made before or after August 17, 2009. She was terminated from her job in October 2009, but could not specifically tie the phone calls or letter to her termination.

Section 362(k)(1) of the Bankruptcy Code provides that a "debtor is entitled to actual damages and attorneys' fees if he is injured by any willful violation of" the automatic stay. Thompson v. Gen'l Motors Acceptance Corp., 566 F.3d 699, 701 (7th Cir. 2009) (citing 11 U.S.C. § 362(k)(1)) (internal quotation marks omitted). A debtor alleging a violation of the stay has the burden of proving the violation of the stay and that the creditor's violation was willful. See, e.g., In re Wilke, No. 10-B-04976, 2010 WL 2034525, at *5 (Bankr. N.D. Ill. May 20, 2010) (Schmetterer, J.). The stay "prevents pre-petition creditors from taking any action to collect their debts." In re Radcliffe, 563 F.3d 627, 630 (7th Cir. 2009). This prohibition "includes threats of immediate action by creditors." Id. A willful violation "does not require specific intent to violate the stay; it is sufficient that the creditor takes questionable action despite the awareness of a pending bankruptcy proceeding." Id. at 631. Therefore, willfulness "can be found even if the creditor believed himself justified in taking the actions found to violate the stay." In re Biesboer, No. 08-B-35834, 2010 WL 2940927, at *2 (Bankr. N.D. Ill July 27, 2010) (Doyle, J.) (citing In re Sumpter, 171 B.R. 835, 843 (Bankr. N.D. Ill. 1994)). However, if "a

creditor violates the automatic stay provision without knowledge that an active bankruptcy case is pending, the violation is technical not willful." In re Wilke, 2010 WL 2034525 at *5 (citing In re Gossett, 369 B.R. 361, 375 (Bankr. N.D. Ill. 2007)) (internal quotation marks omitted). Notice of the bankruptcy filing "can be either through formal notice or otherwise." Id. (citing In re Fridge, 239 B.R. 182, 190 (Bankr. N.D. Ill. 1999)).

While Mr. Wulf argues that his actions were not violations of the stay – that he was only 'inquiring' about why the payroll deductions had ceased or failed to commence – the Court finds that the communication constituted a violation of the automatic stay. At least in the letters, he specifically requests payment of the debt. In the letter to the manager, he asks the hotel to begin or continue payroll deductions, and in the letter to the Debtor he asks for payments of $100 per week. Moreover, in the letter to the Debtor, he threatens to take immediate legal action if she does not begin making payments. The content of the phone calls is less clear, since the Debtor was unable to produce any non-hearsay evidence of the contents of the phone calls. But, the fact that she was reprimanded by her employer seems to indicate that the calls were more than innocuous inquiries.

However, while the Debtor may have demonstrated that Mr. Wulf violated the automatic stay, she has not demonstrated that he had knowledge of the bankruptcy at the time, and therefore she has failed to prove that the violation was willful. The docket demonstrates that Mr. Wulf was not listed as a creditor in the bankruptcy schedules, and there is no evidence in the docket that he had notice of the bankruptcy until he filed his amended proofs of claim on September 15, 2009. Testimony shows that she did not inform him of the bankruptcy until August 17, 2009. Therefore, if the phone calls were made and the letters were sent before the Debtor informed Mr. Wulf of the bankruptcy on the 17th, then the violation of the stay was not willful.

The Debtor argues that the phone calls and letters must have been initiated after she informed Mr. Wulf of the bankruptcy on the 17th. The letter was dated on the 17th and postmarked on the 18th, making it seem like

it was at least sent after he received notice. In contrast, Mr. Wulf claims that he put the letter in the mail on the 17th, shortly before receiving the call from Ms. Gaddy or her attorney, but that the mail was not picked up until the following day. The Debtor responds by claiming it would be 'too coincidental' that he took no action for weeks, but then suddenly sent a letter hours before she notified him of the bankruptcy.

However, Mr. Wulf offered an explanation that was at least as plausible: that the Debtor called Mr. Wulf about the bankruptcy in response to his calls to her employer. According to this version of events, Ms. Gaddy promised to start making weekly payments to Mr. Wulf in July and those payments either ceased or were not made by early August. Mr. Wulf did not have Ms. Gaddy's address, so he called her workplace to ask to speak to her and ask if she still worked there. After verifying she worked there and getting the name of the manager, he drafted and put the letters in the mail. Meanwhile, when Ms. Gaddy heard that Mr. Wulf was calling her workplace, she contacted her attorney. The attorney told her that Mr. Wulf was prohibited from contacting her or her employer, and then either she or her attorney called Mr. Wulf to notify him of the bankruptcy and ask him to stop making collection efforts.

The Debtor was unable to remember when the telephone calls were made, but it seems more likely that they were made shortly before the letter was sent rather than shortly after. It does not make much sense to send a letter to someone, and then call them before the letter has time to even reach them. In contrast, it is highly plausible that someone would call a workplace several times, and when the person refused to return the call and the person answering the phone refused to transfer the call, he would try sending a letter instead. There were inconsistencies in the testimony of both the parties, but ultimately the Debtor bore the burden of proof. The Court finds that the Debtor failed to demonstrate that Mr. Wulf was aware of the bankruptcy at the time the letters were sent or phone calls were made.

**Conclusion**

For the foregoing reasons, the Debtor's motion for sanctions is DENIED.

The foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

August 19, 2010

_____
Judge Manuel Barbosa